STATE OF NORTH CAROLINA v. ARTHUR WHITNEY

No. 7526SC182

(Filed 2 July 1975)

1. Criminal Law § 66— in-court identification — pretrial showup

Burglary victim's in-court identification of defendant was of independent origin and not tainted by a showup at which defendant was exhibited to the victim while sitting alone in a police car.

2. Criminal Law § 48— no admission by silence

An officer's testimony concerning a statement, made in defendant's presence, that defendant had been caught as a "Peeping Tom" was hearsay and not competent as an implied admission where the statement was not made to defendant but to an officer and the statement did not call for a reply.

3. Criminal Law § 34— evidence of other offenses

In a prosecution for burglary, the trial court erred in permitting a witness to testify that defendant broke into her house and committed the offenses of rape and crime against nature ten days before the alleged burglary in question since the evidence went beyond the scope necessary for the limited purpose for which it was offered of showing identity and *modus operandi*.

APPEAL by defendant from *Falls, Judge.* Judgment entered 13 November 1974 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 7 May 1975.

State v. Whitney

· Defendant was indicted on a charge of first degree burglary. He pleaded not guilty and was tried before a jury.

Prior to trial defendant moved to suppress in-court identification. The court conducted a *voir dire* hearing, made findings of fact, and concluded that the identification testimony was admissible. On *voir dire* and again at trial Patricia Bailey, of 1932 Pegram Street, Charlotte, testified that on 10 June 1974, around 3:00 a.m., she had been asleep in her bedroom when she awakened and saw a young man with her pocketbook in his possession. He put his hand to his lips and approached the bed. There was a light on in the room, and Miss Bailey looked into the man's face. Then he touched her and she screamed. The man fled with the pocketbook. He apparently had entered through a torn window screen.

Approximately 24 hours later Officer A. L. McCoy brought Arthur Whitney to Miss Bailey's home and told her he had a suspect. She identified Whitney sitting alone in the police car. She was later shown six to eight photographs from which she selected that of defendant.

Officer McCoy testified that he investigated Miss Bailey's complaint on the night of June 10, and she gave the following description of the man whom she had seen in her room: young Negro male, age 16 to 20 years, 5'6" to 5'7" in height, medium complexion, medium bush, wearing blue jeans and tennis shoes. The next night, about 2:00 a.m., two Negro males brought Arthur Whitney to Officer McCoy and reported that they had caught him trying to peep in their porch window. Whitney told McCoy his name and address, the 1900 block of Pegram Street. Since he fitted the description given by Miss Bailey, the officer immediately took him to the witness's home.

Dorothea Faulkner, of 1621 Pegram Street, testified that on 31 May 1974, at approximately 2:00 a.m., she had been sleeping on her sofa when she awoke and saw Arthur Whitney bending over her with a razor. He raped her and forced her to to perform an act of fellatio. He then fled with money from her pocketbook. It was discovered that a screen was missing from a bedroom window. The court instructed the jury to consider Mrs. Faulkner's testimony only as it tended to show intent, design, guilty knowledge or the identity of defendant.

The jury returned a verdict of guilty as charged and the court sentenced defendant to life imprisonment. He appealed to this Court.

*Attorney General Edmisten, by Assistant Attorney General Parks H. Icenhour and Associate Attorney Isaac T. Avery III, for the State.*

*Richard M. Mitchell for defendant appellant.*

ARNOLD, Judge.

[1] Defendant first contends that the trial court erred in denying his motion to suppress the in-court identification testimony of Patricia Bailey on the ground that it was tainted by an improper show-up procedure. The rule, as set out in *State v. Tuggle,* 284 N.C. 515, 520, 201 S.E. 2d 884, 887 (1974), is as follows:

> "When the admissibility of in-court identification testimony is challenged on the ground it is tainted by out-of-court identification(s) made under constitutionally impermissible circumstances, the trial judge must make findings as to the background facts to determine whether the proffered testimony meets the tests of admissibility. When the facts so found are supported by competent evidence, they are conclusive on appellate courts." [citations omitted.]"

*Accord, State v. Shore,* 285 N.C. 328, 204 S.E. 2d 682 (1974). In its order denying defendant's motion, the court found that Miss Bailey's identification "was not tainted in anywise by any suggestive remarks made by the police, but was based solely and exclusively upon her identification of the defendant in her bedroom shortly after 3:00 a.m. of June 10, 1974 . . . . " These findings are supported by competent evidence, and we are bound by them.

[2] Defendant further contends that it was error to allow testimony concerning the statement, made in his presence, that he had been caught as a "Peeping Tom." We agree. The trial court apparently treated this evidence as an implied admission or an admission by silence, an exception to the hearsay rule. *See generally* McCormick's Handbook of the Law of Evidence § 270, at 651-53 (1972). In *State v. Guffey,* 261 N.C. 322, 325, 134 S.E. 2d 619, 621 (1964), the North Carolina Supreme Court said:

> "To render evidence of an admission by silent acquiescence competent, the statement must have been made in

the presence and hearing of the defendant, he must have understood it, he must have understood that it contained an accusation against him, it must be of such content or made under such circumstances as to call for a reply, that is, it must be such as to render a reply natural and proper, the declarant or some person present must have the right to the information, and there must have been an opportunity for reply."

*See also* 2 Stansbury, N. C. Evidence (Brandis rev.), § 179. The statement in question was made not to defendant but to a police officer as defendant was being placed in custody. It did not call for a reply. Officer McCoy's testimony was proffered in lieu of testimony by the men who made the statement. It was hearsay and therefore incompetent.

[3]  Finally, defendant contends that the court erred in allowing Dorothea Faulkner to testify that defendant broke into her house and committed certain sex offenses ten days before the alleged burglary at the Bailey residence. Again we agree. Under the general rule, evidence of other offenses is inadmissible for the purpose of proving the offense charged. 1 Stansbury, *supra,* § 91. It is true that evidence relevant to the questions of identity or *modus operandi* is admissible notwithstanding the fact that it involves an independent crime. *State v. McClain,* 282 N.C. 357, 193 S.E. 2d 108 (1972) ; *State v. Biggs,* 224 N.C. 722, 32 S.E. 2d 352 (1944). "But the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the courts to rigid scrutiny. [citations omitted.]" *State v. Lyle,* 125 S.C. 406, 417, 118 S.E. 803, 807 (1923), *quoted in State v. McClain,* 240 N.C. 171, 177, 81 S.E. 2d 364, 368 (1954). *See also State v. Molineux,* 168 N.Y. 264, 61 N.E. 286 (1901). In the case at bar, such evidence went beyond the scope necessary for the limited purpose for which it was offered and included details which could only relate to defendant's character and inflame the mind of the jury. Defendant was indicted on a charge of burglary, not rape. We hold that the admission of irrelevant portions of Mrs. Faulkner's testimony was prejudicial error requiring that defendant be given a new trial.

New trial.

Judges MARTIN and CLARK concur.